GEORGE W. JOHNSON vs. THE WILMINGTON CITY RAILWAY COMPANY, a corporation existing under the laws of the State of Delaware.

*Personal Injuries—Street Railway—Pleading—Evidence—Expert Testimony—Negligence—Contributory Negligence—Nonsuit.*

1. Upon a certain state of facts, *held* that the effect of a rapidly moving trolley car upon a rope, commonly called a hand-line, attached to plaintiff's person while he was up a telephone pole near the track of the defendant company, was a proper matter for expert testimony.

2. When the Court are clearly of the opinion that the evidence adduced on the part of the plaintiff is insufficient to support a verdict in favor of the plaintiff, a nonsuit should be granted.

(*May 26, 1905.*)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Edwin R. Cochran, Jr.,* and *J. Harvey Whiteman* for plaintiff.

*Walter H. Hayes* and *Andrew C. Gray* for defendant.

Superior Court, New Castle County, May Term, 1905.

SUMMONS CASE (No. 227, May Term, 1904), to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant company, in so operating one of its cars on the Newport Pike near Wilmington, that it became entangled in a coil of rope attached to plaintiff's person while he was up a telephone pole about thirty feet from the ground and near the track of said company, whereby the plaintiff was thrown to the ground and injured.

The narr contained originally three counts. The first count was as follows:

"1. For that whereas, the said defendant before and at the time of committing the grievances hereinafter mentioned, was a corporation of the State of Delaware, in possession of and operat-

ing a certain street and suburban railway, for the carriage of passengers from the village of Stanton in the County aforesaid to the City of Wilmington in said County. That the said George W. Johnson, the plaintiff, heretofore, to wit, on the first day of February A. D. Nineteen Hundred and Four, at the County aforesaid, while lawfully engaged in fixing wires of the Delaware and Atlantic Telegraph and Telephone Company, up a pole of said last mentioned company, said pole being then and there at the side of the road commonly called the Newport Pike, and being at a great distance from the tracks of the said defendant, to wit, a distance of about seven feet, and while the said plaintiff was then and there up the said pole at a great distance from the ground, to wit, about thirty feet, having then and there a rope commonly called a hand-line, attached to him around his right wrist, the lower end of which said line being then and there coiled at the foot of said pole at a great distance, to wit, about seven feet, from the track of the said defendant, and while in the exercise of all due and proper care and caution on his part to be observed, a certain car then and there under the care and management of certain persons then and there in charge of the said car and then and there in authority under said defendant, and which said car was then and there being negligently and carelessly moved by means of electricity by the said defendant, down a declivity on said Newport road, at a rapid, reckless, unlawful, violent and dangerous rate of speed on the said tracks of the said railway of the said defendant, on said road commonly called Newport Pike, and by and through the said negligence, carelessness and recklessness of the said defendant, the said hand-line attached as aforesaid was caught by said car and the said plaintiff was then and there and thereby dragged, torn and pulled from said pole and was bruised, crushed, mashed, wounded and greatly injured in his body and limbs, and he was badly strained and injured in his back and limbs, and his leg was fractured, and he was otherwise injured, disabled, lamed and disordered for a long space of time, to wit, thence hitherto, during all which time the said plaintiff suffered great pain and was hindered and prevented from transac-

ting and attending to his necessary work and business, and the said plaintiff by means thereof became and was, and still is greatly injured, and also thereby the said plaintiff was obliged to incur and did incur great expense, to wit, to the amount of One Thousand Dollars, in and about endeavoring to be cured of the injuries so sustained by him as aforesaid, and is otherwise injured and damaged, to wit, at New Castle County aforesaid, to the damage of the said plaintiff of Twenty Thousand Dollars, and therefore he brings his suit."

The second count was similar to the first, alleging in addition that the plaintiff was employed as a lineman by the Delaware and Atlantic Telegraph and Telephone Company, that the said rope reached "from the said plaintiff, to the ground, hanging then and there in a straight line parallel with the said pole;" that the car in question was "under the care and management of certain persons then and there in charge of the said car and then and there in authority under said defendant, which said car was being negligently and carelessly moved down grade, by means of electricity, by the said defendant, at a rapid, reckless, unlawful and dangerous rate of speed on said railway of the said defendant on said road  *  *  *  without sounding the gong or giving any other proper warning of the approach of the said car as aforesaid to the place where the said plaintiff was lawfully working as aforesaid," etc.

The third count alleged in addition to the averments in the first two counts, as follows: "it being at and about the day of the committing of the grievances herein complained of, a common and usual occurrence for linemen employed by said Delaware and Atlantic Telegraph and Telephone Company to be engaged in running and repairing wires of said last mentioned company on the poles of said company along the line of the railway of the said defendant, and it being usual and customary for the motorman, one of the persons having charge of the car of the defendant and under the defendant's authority, to sound the gong upon the approach of a car to a pole upon which a man was working," etc.

Plaintiff filed an amendment to the above declaration (being

No. 4 count) similar to the preceding counts, alleging in addition, that at the time and place alleged, the said car "was then and there so carelessly and negligently run upon the tracks of the said defendant in Christiana Hundred, County and State aforesaid, down a declivity of the said road, and past the pole where the said plaintiff was then and there at work as aforesaid, at such a reckless, violent, unlawful and dangerous rate of speed, that the hand-line attached to the plaintiff as aforesaid, was forced, by the suction created by the rapidity with which said car was moving, in the direction of the said car and became entangled in said car, so that the said plaintiff was then and there and thereby dragged," etc.

Defendant demurred generally to said amended declaration, on the ground that it did not allege that the defendant or its servants knew that the plaintiff was up the pole or ought to have known it by the exercise of ordinary diligence. The demurrer was overruled.

At the trial, the plaintiff testified in substance as follows:

On the first day of February, 1904, I was employed by the Delaware and Atlantic Telephone Company out on the Newport Turnpike, in Christiana Hundred, Delaware, stringing wires and putting on cross-arms on telephone poles. On that day I had just climbed up a telephone pole, about thirty feet from the ground, and was in the act of putting a cross-arm on the pole. I had a hand-line or rope which all linemen have to use. I had not got the cross-arm up the pole. A young man was there who was going to put the cross-arm on the line. That is what the line is for. I had the loop of the line hanging over my right wrist. That is the way I took it up the pole. I judge the line was sixty feet long and about a half inch in diameter. The line was lying coiled up right by the side of the pole. I had done the line up myself so that it would not be dangling under my feet. I had the loop in my hand, and let the line feed off the coil as I climbed up the pole. The tracks of the Wilmington City Railway Company, going from Wilmington to Stanton, run along the left or east side of the Pike out there. The pole up which I

climbed was about six and a half feet east of the track and on the same side of the Pike, that the track was on, and on the Pike side of the fence. I saw a car of the Wilmington City Railway Company coming over the hill as I was climbing up the pole. I did not hear it sound any gong or give any notice at all of its approach. If it did ring it was not near enough for me to hear it. At that time Mr. Farra was across the track about fifteen feet from the rope. I did not see it any more, as my back was turned towards the track and I was facing towards the field. I suppose the car was coming at the rate of thirty or thirty-five miles an hour. As I climbed the pole the rope was against the pole, or only about six or eight inches away, it being on my wrist as I climbed. The wind was blowing in a direction that would blow the rope away from the railway track. There was a wire of the railway company below me and between the pole and the trolley track. The rope I had in my hand towards the field side or away from the track. As the car came along it caught the line and jerked me off the pole, and I struck the fence and that made me unconscious. I did not see it touch the rope; it was done too quick. But I don't see how I could have been jerked off the pole in any other way. I did not know when I struck the fence. I landed right across the rail. It broke my leg at the thigh so that the bone stuck out. (Counsel for defendant objected to the testimony last above given as irrelevant under the allegations in the declaration which averred that plaintiff's leg was fractured by being pulled from the pole, and not by striking the fence. The objection was overruled, and the witness continued, as follows):

I suppose after that I rolled off on the ground. It knocked me unconscious, and I did not know anything until some of the fellows who were working out there with me took hold of me. (The witness then described the nature and character of his injuries.)

*Willard Farra*, a witness for the plaintiff, testified that he was a fellow employee of the plaintiff on the day of the accident and was standing right across the road from Johnson at the time

of the accident.   That as the car came down the hill, he happened to look up and saw Johnson up the pole about thirty feet from the ground, and then looked at the car, and saw the hand-line attached to the car somewhere; did not know whether it was in the wheel or gearing.   It snatched Johnson down from the pole to the ground.   It was done in a second; almost instantly.   Before the hand-line became attached to the car, witness saw it lying there in a coil at the bottom of the pole, which was about seven feet east of the car track.   After stating that he did not know what caused the rope to become entangled in the car, unless it was the suction; witness was asked by plaintiff's counsel to state what in his opinion caused the rope to become connected with and entangled in the car.   Upon objection of counsel for defendant on the ground that the question was speculative, the question was ruled out.

The same witness testified that the motorman said that he took a piece of rope out from the car wheel when he stopped it. The car was running about thirty miles an hour at the time of the accident.   Witness further corroborated the plaintiff on other points of the latter's testimony and testified as to the plaintiff's injuries.   The question asked the witness by plaintiff's counsel "Was there any other force of any kind, other than the suction created by the rapidly moving car that would cause the rope to become entangled in the gearing of that car,?" upon objection by defendant's counsel was  ruled out as argumentative.

*Thomas F. Strong*, another employee of the Delaware and Atlantic Telephone Company, testified that he was working near the next telephone pole to Johnson and about a hundred and fifty feet from him, being between Johnson and the approaching trolley car in question.   That he did not see the car coming down the hill in the direction of Johnson until it was nearly opposite him (the witness).   That he was standing in the middle of the railway track; that he turned to go towards the pole with his face towards the east—"and I heard a noise over my head and I turned around and saw the car and I jumped out in the road.   I had my hand-line in my hand.   As I jumped out in the road the

car went by at a speed of about thirty-five miles an hour. It did not slacken its speed from the time it passed me until it passed the pole where Mr. Johnson was working. Then I heard somebody 'holler,' and I looked around and saw Johnson right at the bottom of the fence. I did not see him falling. The car was below Johnson. I do not know whether any part of the hand-line that Johnson was working with was caught in the gearing of the car."

*George Anderson*, dispatcher for the defendant company, was produced as a witness for the plaintiff and asked the following question, which was objected to and ruled out as irrelevant, viz: "Do you know the schedule time on the first day of February 1904, of the defendant company's cars running from Wilmington to Stanton?"

*Chauncey P. Holcomb*, was also produced as a witness for plaintiff, and after testifying that he was superintendent of the Wilmington, New Castle and Southern Railway Company, that the cars of the said company were operated by electric power, that his duties required him to be frequently on trolley cars going from point to point and to superintend their operation, was asked the following questions: "I will ask you what in your opinion is the effect of a rapidly moving trolley car, so far as the displacement of atmosphere is concerned?" Objected to by counsel for defendant.

PENNEWILL, J.:—We think this question, not being based upon any facts involved in this case, is inadmissible.

"Q. What, in your opinion, is the effect of a rapidly moving trolley car, down a steep declivity, upon a light object like a rope one-half inch in diameter, within six and one-half feet of the track dangling through the air and a part of it coiled on the ground?" Objected to by counsel for defendant because the question did not embody all the facts. Objection sustained.

"Q. What, in your opinion, is the effect of a rapidly moving trolley car, down a steep declivity, upon a rope, dangling through the air for a distance of thirty feet and thirty feet more coiled on the ground and it being suspended through the atmosphere at a distance of six and one-half feet from the trolley car?" Objected

to by counsel for defendant on the same ground. Objection sustained.

"Q. It has been testified this morning that the plaintiff in this case was a lineman in the employ of the Delaware and Atlantic Telegraph and Telephone Company; that he was up a pole a distance of thirty feet; that he had tied to his right wrist a hand-line one-half inch in diameter; that that rope was sixty feet long and it had been coiled on the ground on the Wilmington side of the pole at the foot of the pole, close up against it, six and one-half feet from the track; that as the man climbed up the pole with the rope it became uncoiled and thirty feet of it went up with him, making thirty feet of it suspended through the air, the remaining thirty feet still being coiled on the ground; that there was a wind blowing in the opposite direction from the trolley across the tracks, away from the tracks; that there was a feed wire running about half way between the top of the pole and the ground, the hand-line being still on the opposite side of the feed wire; that this car was running at a very rapid rate of speed; that as it came over the top of the hill a witness was standing in the middle of the tracks of the railway company and saw the car coming at a distance of across this court house, at a very rapid rate of speed, and as soon as he saw it that distance off he jumped out of the way and that he just cleared the track as the car rushed by; that the opposite end of this rope from where the man was, was seen in the brake-shoes or some part of the car; that this man, the plaintiff, was dragged quickly from the top of the pole down to the ground; that there were pieces of rope afterward found in the gearing of this car; that this all happened—one witness said in two or three seconds and others said almost at once: Now I will ask you, upon that state of facts, what, in your opinion, is the effect of that rapidly moving trolley car upon such a rope?" Objected to by counsel for defendant as being a matter for the jury and not for an expert to determine, and as not stating all the facts accurately.

PENNEWILL, J.:—We think the witness may answer that question.

"A. In my opinion there might be suction enough to draw the rope to the car."

*Nathan Baker*, having qualified as a motorman of electric cars of four years' experience, gave similar testimony to the above. The plaintiff then rested.

Counsel for defendant thereupon moved for a nonsuit upon the following two grounds:

*First*, that the plaintiff's evidence failed to show that there was any negligence on the part of the defendant.

*Second*, that said evidence showed that there was contributory negligence on the part of the plaintiff.

After hearing an extended argument and the citation of many authorities by the respective counsel, the court rendered the following opinion, granting the nonsuit:

PENNEWILL, J:—The Court are clearly and unanimously of the opinion that the evidence in this case would be insufficient to support a verdict in favor of the plaintiff; and reluctant as we are to do so, we feel it our duty to grant this motion, and we direct a nonsuit to be entered.

(The plaintiff declined to take a nonsuit, and the defendant requesting that the jury be instructed to render a verdict for the defendant, the Court charged the jury as follows):

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—For the reasons we have given in granting the motion for a nonsuit, we direct you to return a verdict in favor of the defendant.

Verdict for defendant.